UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JEFFREY KWATINETZ, O'SHEA JACKSON,

Petitioners,

-against-

ROGER MASON,

Respondent.

Civ. A. No. _________

**PETITIONERS' MEMORANDUM OF LAW IN SUPPORT OF PETITION TO ENJOIN ARBITRATION**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....1

STATEMENT OF FACTS ....2

BIG3 Terminates Mason For Cause ....2

Mason's Attempt To Bring An Arbitration Against Petitioners, Who Mason Acknowledges Are Not Parties To The Arbitration Agreement....3

The Arbitration Clause At Issue ....4

ARGUMENT....6

I. This Court Has Authority Under The FAA To Enjoin Arbitration Against Petitioners, Who Are Non-Signatories To The Agreement To Arbitrate ....6

II. Because Petitioners Are Non-Parties To The Arbitration Agreement, The Question Of Whether They Can Be Forced To Arbitrate Is Properly Heard By This Court ....7

III. Petitioners Are Non-Parties Who Cannot Be Forced To Participate In The Arbitration Without Their Consent....8

A. Petitioners Have Not Agreed To Arbitrate ....8

B. Mason's Alleged Basis Of Jurisdiction Is Unavailing....10

C. Petitioners Are Not Otherwise Bound By The Arbitration Clause....12

IV. Mason Should Be Permanently Enjoined From Proceeding Against Petitioners In The Arbitration....14

CONCLUSION....15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Belzberg v. Verus Investments Holdings Inc.*,
21 N.Y.3d 626 (2013) .......... 9, 10, 13

*Boroditskiy v. European Specialties LLC*,
No. 17-CV-689, 2018 WL 2538509 (S.D.N.Y. June 4, 2018) .......... 7

*BS Sun Shipping Monrovia v. Citgo Petroleum Corp*.,
509 F. Supp. 2d 334 (S.D.N.Y. 2007) .......... 12, 13

*First Am. Bulk Carrier Corp. v. Van Ommeren Shipping (USA) LLC*,
540 F.Supp. 2d 483 (S.D.N.Y. 2008) .......... 8

*Howsam v. Dean Witter Reynolds, Inc.*,
537 U.S. 79 (2002) .......... 8

*In re Am. Express Fin. Advisors Sec. Litig.*,
672 F.3d 113 (2d Cir. 2011) .......... 6, 8, 14

*In re D & B Const. of Westchester, Inc.*,
21 Misc. 3d 1125(A), 2008 WL 4809405 (N.Y. Sup. Ct. 2008) .......... 7

*Indus. Risk Insurers v. M.A.N. Gutehoffnungshütte GmbH*,
141 F.3d 1434 (11th Cir. 1998) .......... 6

*Marlene Indus. Corp. v. Carnac Textiles, Inc.*,
45 N.Y.2d 327 (1978) .......... 8

*McKenna Long & Aldridge, LLP v. Ironshore Specialty Ins.*,
No. 14-CV-6633, 2015 WL 144190 (S.D.N.Y. Jan. 12, 2015) .......... 12, 13

*Merrill Lynch Inv. Managers v. Optibase, Ltd.*,
337 F.3d 125 (2d Cir. 2003) .......... 12, 14

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Stucco Sys.*,
289 F. Supp. 3d 457 (S.D.N.Y. 2018) .......... 7, 8

*Roach v. Morse*,
440 F.3d 53 (2d Cir. 2006) .......... 14

*Satcom Int'l Grp. PLC v. Orbcomm Int'l Partners, L.P.*,
49 F. Supp. 2d 331 (S.D.N.Y. 1999) .......... 6

*Societe Generale de Surveillance, S.A. v. Raytheon European Mgmt. & Sys. Co.*,
643 F.2d 863 (1st Cir. 1981) .......... 6, 7

*Steelworkers v. Warrior & Gulf Co.*,
363 U.S. 574 (1960) .......... 10

*Tellium, Inc. v. Corning Inc.*,
No. 03 Civ. 8487, 2004 WL 307238 (S.D.N.Y. Feb. 13, 2004) .......... 14

*Thomson-CSF, S.A. v. Am. Arb. Ass'n*,
64 F.3d 773 (2d Cir. 1995) .......................................................................... 8, 9, 12, 13

*TNS Holdings, Inc. v. MKI Sec. Corp.*,
92 N.Y.2d 335 (1998) ........................................................................................ 7, 8, 13

*UBS Sec. LLC v. Voegeli*,
684 F. Supp. 2d 351 (S.D.N.Y. 2010) ............................................................................ 14

*Veera v. Janssen*,
No. 05 Civ. 2145, 2005 WL 1606054 (S.D.N.Y. July 5, 2005) ........................................ 10, 13

*Volt Info. Scis. v. Bd. of Trustees of Leland Stanford Junior Univ.*,
489 U.S. 468 (1989)........................................................................................................ 8

**Statutes**

9 U.S.C. § 2…………………………………………………………………………….. 6

9 U.S.C. § 4……………………………………………………………………………...1, 6

Petitioners Jeffrey Kwatinetz and O'Shea Jackson (a/k/a Ice Cube) (collectively, "Petitioners"), submit this memorandum of law in support of their petition pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. § 4, for an order permanently enjoining as against petitioners the employment arbitration brought by Respondent Roger Mason ("Mason") in New York before the American Arbitration Association (the "AAA"), Case No. 01-18-0001-1291 (the "Arbitration").

## PRELIMINARY STATEMENT

Petitioners bring this action to enjoin, as against them, an arbitration arising from an arbitration clause to which Petitioners never agreed, contained in an agreement to which Petitioners are not parties. Mason, the former President and Commissioner of BIG3 Basketball, LLC ("BIG3" or the "Company"), was terminated by BIG3 for cause in March 2018. Mason's employment, and his termination for cause, were governed by the Executive Employment Agreement between Mason and BIG3 dated November 24, 2016 ("Employment Agreement"). The Employment Agreement contains an arbitration clause, and, pursuant to this clause, Mason has commenced the Arbitration to challenge his termination.

Not content to arbitrate against BIG3—his actual employer, and ***the only counterparty to the Employment Agreement***—Mason names both Mr. Kwatinetz and Mr. Jackson as respondents in his Amended Demand for Arbitration ("Amended Demand"), and brings claims against them individually. However, as Mr. Mason well knows, neither Mr. Kwatinetz nor Mr. Jackson are parties or signatories to Mr. Mason's Employment Agreement, nor have they ever agreed to the arbitration clause contained therein. Thus, they have never agreed to arbitrate this dispute with Mason, and there is no basis for their inclusion in the Arbitration. To the extent Mason seeks to arbitrate any claims arising from his employment, he must do so against his former employer and signatory to the Employment Agreement: BIG3.

Despite Petitioners' clear lack of consent to participate in any arbitration with Mason, Mason has manifested a determination to proceed with an arbitration that names Petitioners as respondents. The nature of the dispute and Mason's course of conduct make clear that, if Petitioners refuse to participate in the arbitration, Mason will seek to arbitrate Petitioners' rights and obligations *in absentia*. Without timely court intervention, Petitioners will face an untenable dilemma: either (i) participate in an arbitration to which they did not consent, submit their objections to the tribunal, and be bound by its non-appealable determination; or (ii) refuse to participate in the arbitration and essentially default, and then wait to litigate the enforceability of any award Mason might obtain against them therein.

Petitioners therefore respectfully request that this Court permanently enjoin the Arbitration as to Petitioners.

## STATEMENT OF FACTS

### BIG3 Terminates Mason For Cause

BIG3 is a 3-on-3 professional basketball league founded by Mr. Jackson and Mr. Kwatinetz in October 2016. BIG3 is a Delaware limited liability company. On November 24, 2016, Mason and BIG3 entered into the Employment Agreement, pursuant to which Mason was to serve as President and Commissioner of BIG3. Epstein Decl., Ex. 1 (Employment Agreement). Mason and BIG3 are the only parties to the Employment Agreement. *Id.* at 1. Mason and BIG3 are also the only signatories to the Employment Agreement. *Id.* at 20.

As BIG3's President and Commissioner, Mason was expected to be both the manager and the public face of BIG3. *See id.* § 2. Unfortunately, throughout his tenure at BIG3, Mason failed to fulfill his job responsibilities and repeatedly acted contrary to the best interests of the Company, leading BIG3 to terminate Mason for cause. *See* Epstein Decl., Ex. 2 (Termination Notice). On March 12, 2018, BIG3 gave Mason notice of his termination for cause, by letter setting forth the

grounds for termination ("Termination Notice") as required by Section 8(f) of the Employment Agreement. *Id*.

**<u>Mason's Attempt To Bring An Arbitration Against Petitioners, Who Mason Acknowledges Are Not Parties To The Arbitration Agreement</u>**

On March 13, 2018, the day after he received the Termination Notice, Mason filed a Demand for Arbitration ("Demand") with the AAA pursuant to the AAA Employment Arbitration Rules. Epstein Decl. ¶ 4. This Demand was a bare notice pleading, merely listing "breach of contract" and "defamation" as the operative claims, without providing any detail or basis as to the nature of these claims. *Id*. Mason's Demand also named both BIG3 and Mr. Kwatinetz as respondents, without identifying any basis for jurisdiction over either. *Id.* Indeed, the Demand did not identify the contract at issue, or the relevant arbitration clause, but did attach the Employment Agreement. *Id.* Subsequently, Mason's counsel informed the Company's counsel that the Demand was filed pursuant to Section 16 of the Employment Agreement. *Id*. ¶ 5. Mason's counsel also informed the Company's counsel that Mason intended to file an amended demand and more detailed statement of claim. *Id.*

On May 29, 2018, Mason finally filed the promised Amended Demand, which, again, named BIG3, as well as Mr. Kwatinetz individually. *Id*. ¶ 6. The Amended Demand also named Mr. Jackson individually as a respondent. *Id.* The Amended Demand contained a detailed statement of claim, and added thirteen additional causes of action to the two originally listed in the Demand. *Id.* Amongst the laundry list of claims, the Amended Demand includes causes of action for defamation, retaliatory discharge, and joint and several liability against both Petitioners, and hostile work environment against Mr. Kwatinetz. *Id.* However, although the Amended Demand is nearly 50 pages long, and pleads multiple claims against both Mr. Jackson and Mr. Kwatinetz

directly, the Amended Demand fails to identify any basis of purported AAA jurisdiction over these individuals. *Id.*

On July 13, 2018, BIG3 filed its Answer to Mason's Amended Demand ("Answer"). *Id.* ¶ 7. BIG3's Answer included various counterclaims against Mason, including breach of contract, breach of fiduciary duty and faithless servant, fraudulent inducement, tortious interference, and trade libel. *Id.* Because Petitioners are not signatories to the Employment Agreement and thus are not subject to AAA jurisdiction, they did not join in BIG3's Answer. *Id.* Rather, Petitioners reserved their rights to contest AAA jurisdiction over them in a court of appropriate jurisdiction. *Id.*

Later that day, the arbitrator held an initial case management conference with counsel for all parties named in the Amended Demand ("Initial Conference"). *Id.* ¶ 8. During that conference, Mason's counsel asserted that, notwithstanding the fact that neither Petitioner is a party to the Employment Agreement, the arbitration clause found in Section 16 of the Employment Agreement was binding upon Petitioners and was the basis for purported AAA jurisdiction over them. *Id.* Petitioners' counsel disputed this, and informed the arbitrator that Petitioners' view was that, because this was a question of arbitral jurisdiction over non-parties (as opposed to a dispute over the arbitrability of a claim between parties to an arbitration agreement), the issue would need to be resolved by a court, not in arbitration. *Id.* Accordingly, Petitioners' counsel confirmed that they would file the instant Petition before this Court. *Id.*

**<u>The Arbitration Clause At Issue</u>**

Section 16 of the Employment Agreement is a lengthy arbitration clause ("Arbitration Clause"). Employment Agreement § 16. As noted above, the only parties to the contract are Mason and BIG3, and the Arbitration Clause clearly reflects that this is an agreement between those two parties. Indeed, Section 16(a) is the "Agreement to Arbitrate" which states: "***The***

***Company [BIG3] and Executive [Mason] agree*** that in the event of any dispute or claim relating to or arising out of the employment relationship contemplated by this Agreement, ***Executive and the Company agree to an arbitration*** as provided below in this Section 16." *Id.* § 16(a) (emphasis added). Thus, the Arbitration Clause explicitly states that this is an agreement to arbitrate between Mason and BIG3. Unsurprisingly, given that neither Mr. Jackson nor Mr. Kwatinetz is a party or signatory to the Employment Agreement, neither is included in the contract's agreement to arbitrate.

Similarly, Section 16 includes an express acknowledgment and waiver of a right to trial by judge and/or jury by Mason and BIG3: "***Executive and the Company understand and agree*** that, by signing this Agreement, ***Executive and the Company are expressly waiving*** any and all rights to a trial before a judge and/or a jury regarding any disputes and claims which Executive and the Company … have that are subject to arbitration under this Section 16 . . . ." *Id.* § 16(e) (emphasis added). And again, in contrast to Mason and BIG3, each of whom is stated as explicitly agreeing to waive their rights to a judge and/or jury trial, neither Mr. Jackson nor Mr. Kwatinetz is mentioned in this provision.

The Arbitration Clause sets forth in great detail the procedural rules which will govern any arbitration, confirms that the Arbitration Clause is an agreement to arbitrate under the FAA, and sets the venue for any arbitration in New York, New York. *Id.* §§ 16(f)-(h).

The Arbitration Clause also sets forth additional limits to the arbitrator's authority. There is a "Claims Not Covered by the Agreement" section, which exempts workers compensation, ERISA, or certain other statutory claims from arbitration. *Id.* § 16(b). There is a "Class and Collective Action Waiver" which waives all class or collective actions, and, to the extent such waiver is found by a court to be ineffective, exempts from arbitration any such class or collective

action. *Id.* § 16(d). There is also a "Resolution of Disputes" section, which is a delegation clause delegating disputes as to arbitrability of a particular type of issue or claim to the arbitrator. *Id*. § 16(j).

## ARGUMENT

### I. This Court Has Authority Under The FAA To Enjoin Arbitration Against Petitioners, Who Are Non-Signatories To The Agreement To Arbitrate

The Arbitration Clause on which Mason bases his demand for arbitration falls within the scope of the FAA, since it is "[a] written provision in . . . a contract evidencing a transaction involving commerce," as defined in 9 U.S.C. § 2. Indeed, Mason and BIG3 explicitly acknowledged that the Arbitration Clause was "an agreement to arbitrate under the FAA." Employment Agreement § 16(h). FAA § 4 allows a party to petition to a district court for an order to compel arbitration. The Second Circuit, consistent with other circuits, has confirmed that FAA § 4 also provides the court with the concomitant authority to enjoin arbitration proceedings within its district. *In re Am. Express Fin. Advisors Sec. Litig.*, 672 F.3d 113, 140–42 (2d Cir. 2011) (concluding that "a district court may properly enjoin arbitration proceedings that are not covered by a valid and binding arbitration agreement"); *see also Satcom Int'l Grp. PLC v. Orbcomm Int'l Partners, L.P.*, 49 F. Supp. 2d 331, 342 (S.D.N.Y.) (concluding that the district court has power to stay arbitration under the FAA), *aff'd*, 205 F.3d 1324 (2d Cir. 1999); *Societe Generale de Surveillance, S.A. v. Raytheon European Mgmt. & Sys. Co.*, 643 F.2d 863, 867–68 (1st Cir. 1981) ("To allow a federal court to enjoin an arbitration proceeding which is not called for by the contract interferes with neither the letter nor the spirit of [the FAA]. Rather, to enjoin a party from arbitrating where an agreement to arbitrate is absent is the concomitant of the power to compel arbitration where it is present."); *Indus. Risk Insurers v. M.A.N. Gutehoffnungshütte GmbH*, 141 F.3d 1434, 1449 n.23 (11th Cir. 1998) (finding that "the district court had the power to enjoin the

arbitration" under the FAA (citing *Societe Generale*, 643 F.2d at 868)). Thus, the Court has the authority to grant the relief requested in the Petition.

## II. Because Petitioners Are Non-Parties To The Arbitration Agreement, The Question Of Whether They Can Be Forced To Arbitrate Is Properly Heard By This Court

It is beyond dispute that Petitioners are neither parties nor signatories to the Employment Agreement that forms the basis for the AAA's jurisdiction over the Arbitration; thus, it is black letter law that the threshold question of whether Petitioners are subject to the Arbitration is for this Court—not the arbitrator—to decide.

New York law is clear that whether a non-signatory can be bound by an arbitration agreement is a question for the court, not the arbitrator. *See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Stucco Sys.*, 289 F. Supp. 3d 457, 467 (S.D.N.Y. 2018) ("[W]hether [non-signatory] Respondent [was] to be a party to the [arbitration agreement] [was] an issue for judicial determination first.") (collecting cases); *see also Boroditskiy v. European Specialties LLC*, No. 17-CV-689, 2018 WL 2538509, at *3–4 (S.D.N.Y. June 4, 2018) (finding that the issue of whether non-signatories were individually bound by the arbitration provision was an issue for the court to determine); *In re D & B Const. of Westchester, Inc.*, 21 Misc. 3d 1125(A), 2008 WL 4809405, at *6 (N.Y. Sup. Ct. 2008) ("The question of whether a non-signatory is a party to an arbitration agreement is one for the court in the first instance." (citation omitted)). Without such rule, a non-signatory's right to judicial determination would be severely curtailed—a party to an arbitration agreement might force any non-signatory to an agreement to arbitrate (or to at least arbitrate the question of arbitral authority) simply by filing an arbitration demand against the non-signatory. *See TNS Holdings, Inc. v. MKI Sec. Corp.*, 92 N.Y.2d 335, 339 (1998) ("Although arbitration is favored as a matter of public policy, equally important is the policy that seeks to avoid the unintentional waiver of the benefits and safeguards which a court of law may provide in resolving

disputes." (citations omitted)). To prevent this, the authority remains with the Court to make an initial judicial determination of whether or not a non-signatory is bound by an arbitration agreement. *See Stucco Sys.*, 289 F. Supp. 3d at 467; *First Am. Bulk Carrier Corp. v. Van Ommeren Shipping (USA) LLC*, 540 F.Supp. 2d 483, 484–85 (S.D.N.Y. 2008) (holding that whether non-signatory shipping company was bound by charterer's agreement to arbitrate was a question for the court, not the arbitrator).[1]

## III. Petitioners Are Non-Parties Who Cannot Be Forced To Participate In The Arbitration Without Their Consent

### A. Petitioners Have Not Agreed To Arbitrate

"Arbitration under the [FAA] is a matter of consent, not coercion." *In re Am. Express*, 672 F.3d at 127 (quoting *Volt Info. Scis. v. Bd. of Tr. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)). "[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id.* (quoting *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002)). An actual, clear agreement by a party to arbitrate is essential, as by so agreeing, a party waives rights under state and federal procedural and substantive law, and "it would be 'unfair to infer such a significant waiver on the basis of anything less than a clear indication of intent.'" *TNS Holdings, Inc.*, 92 N.Y.2d at 339 (quoting *Marlene Indus. Corp. v. Carnac Textiles, Inc.*, 45 N.Y.2d 327, 333-34 (1978)); *see also Thomson-CSF, S.A.*

---

[1] At the Initial Conference, Mason's counsel argued that, because the Arbitration Clause included a clause delegating authority to the arbitrator to hear disputes as to arbitrability of a claim or issue, *see* Employment Agreement § 16(j), the question of whether Petitioners are subject to arbitration is one for the arbitrator, not this Court. However, courts are clear that such delegation clauses may delegate authority to the arbitrator to hear disputes as to the arbitratibility of a type of claim or issue, but not as to whether a non-signatory is subject to arbitration in the first instance. This determination is reserved for the courts. *See Stucco Sys.*, 289 F. Supp. 3d at 467 ("To use the delegation clause to demand that arbitrators settle the question of who are the parties to the agreement puts the proverbial cart—the question of whether the arbitration agreement is valid—before the horse—whether a non-signatory has anything to do with a contract it did not clearly sign.").

*v. Am. Arbitration Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995) (Arbitration "agreements must not be so broadly construed as to encompass claims and parties that were not intended by the original contract."). Thus, a party may not be forced to arbitrate a dispute absent a specific, contractual agreement to do so.

Petitioners never agreed to arbitrate the dispute with Mason. The only two parties to the Employment Agreement are Mason and BIG3. Employment Agreement at 1. Mason and BIG3 are also the only two signatories to the Employment Agreement:

IN WITNESS WHEREOF, Executive and the Company have caused this Executive Employment Agreement to be executed as of the date first written above.

ROGER MASON

BIG3 BASKETBALL, LLC

By: ____________
Name: Jeffry Kwatinetz
Title: Co-founder

*Id.* at 20.

The Arbitration Clause itself is also clear that this is an agreement only between Mason and BIG3. Numerous subsections of the Arbitration Clause are drafted as between "Executive [Mason] and the Company [BIG3]." Notably, the very first subsection of the Arbitration Clause is the "Agreement to Arbitrate" and this is solely between "Executive and the Company." *Id.* § 16(a). Similarly, the Arbitration Clause contains an express waiver of a right to trial by judge or jury that is similarly exclusive to "Executive and the Company." *Id.* § 16(e).

Thus, on a plain reading of the contract, neither Mr. Jackson nor Mr. Kwatinetz is a party to the Employment Agreement, nor has either agreed to be bound by the Arbitration Clause or otherwise agreed to arbitrate. Thus, there is no basis for the Arbitration to proceed against them. *Belzberg v. Verus Investments Holdings Inc.*, 21 N.Y.3d 626, 630 (2013) ("[N]onsignatories are

generally not subject to arbitration agreements." (citing *Steelworkers v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 582 (1960)); *Veera v. Janssen*, No. 05 Civ. 2145, 2005 WL 1606054, at *4 (S.D.N.Y. July 5, 2005) (holding that a corporation's managing directors were not bound by an arbitration clause where it was clear that they were not parties to the agreements).

**B. Mason's Alleged Basis Of Jurisdiction Is Unavailing**

Although Mason's Amended Demand entirely fails to state a basis for any AAA jurisdiction over Petitioners, at the Initial Conference in front of the arbitrator, Mason claimed that jurisdiction arose because the "Class Action and Collective Waiver" subsection of the Arbitration Clause includes the language: "The arbitrator shall not have authority to hear or decide class or collective actions, or any representative actions on behalf of other employees. The arbitrator's authority to resolve disputes and make awards under this Section 16 is limited to disputes between: (i) Executive and the Company or any of its subsidiaries; and (ii) Executive and any current or former officers, directors, employees and agents, if such individual is sued for conduct arising out of their employment." Epstein Decl. ¶ 8; Employment Agreement § 16(d). According to Mason, romanette (ii) binds any current or former officer, director, employee, or agent of BIG3 to submit to arbitration in their individual capacity. This argument is unavailing.

It is clear from a reading of the provision as a whole that subsection 16(d) is a limitation on the scope of the arbitrator's authority in respect to class or collective actions waiver, not a grant of jurisdiction over non-parties. Subsection 16(d) reads:

> Class and Collective Action Waiver. To the extent permitted by law, all covered claims under this Section 16 must be brought in the parties' individual capacity, and not as a plaintiff or class member in any purported class or collective proceeding. No claims may be brought or maintained on a class or collective basis either in court or in arbitration. All such claims will be decided on an individual basis in an arbitration pursuant to this Section 16. Executive and the Company expressly waive any right with respect to any covered claims to submit, initiate, or participate as a plaintiff, claimant or member in a class action or collective action, regardless of whether the action is filed in arbitration or in court. Furthermore, if a

        > court orders that a class action or collective action should proceed, in no event will such action proceed in the arbitration forum. Claims may not be joined or consolidated in arbitration with disputes brought by other individual(s), unless agreed to in writing by all parties. If for any reason this class or collective action waiver is found to be unenforceable, the class or collective claim may only be heard in court and may not be arbitrated. The arbitrator shall not have the authority to hear or decide class or collective actions, or any representative actions on behalf of other employees. The arbitrator's authority to resolve disputes and make awards under this Section 16 is limited to disputes between: (i) Executive and the Company or any of its subsidiaries; and (ii) Executive and any current or former officers, directors, employees, and agents, if such individual is sued for conduct arising out of their employment. No arbitration award or decision will have any preclusive effect as to the issues or claims in any dispute with anyone who is not a named party to the arbitration.

This clause is a waiver by the parties to the Employment Agreement of any right to join any class or collective actions, and makes clear that, to the extent such waiver is found unenforceable by a court and a class or collective action is allowed to proceed, that action will be outside the authority of any arbitrator. The language Mason points to simply clarifies the scope of the arbitrator's authority in respect to this waiver. Under this subsection, the arbitrator has authority to hear claims ***between the parties*** that fall within the delineated scope, but, in any event, the arbitrator has not been granted authority to decide class or collective actions (whether or not these actions might otherwise be said to be within the scope of the grant of arbitral authority).

Mason's argument conflates the scope of the arbitrator's contractually-granted ability to hear a claim between the parties to the agreement arising from certain types of conduct with a jurisdictional grant of authority over any person named in romanette (ii). This turns the idea of arbitral jurisdiction on its head. As set forth in detail above (Section III.A), arbitration is a creature of contract, and in order to be subject to arbitration, there must be clear assent by the parties to arbitrate. The fact that parties who have agreed to arbitrate certain claims between them that might arise from interactions with non-parties does not signal the required assent on behalf of these non-parties to themselves be bound to arbitration. At most, it means that, should a non-party assent to

arbitration with a signatory, that claim would then be within the scope of the contractual grant of authority to the arbitrator. *See McKenna Long & Aldridge, LLP v. Ironshore Specialty Ins.*, No. 14-CV-6633, 2015 WL 144190, at *7 (S.D.N.Y. Jan. 12, 2015) (noting that while non-signatory corporate agents are generally not bound by an arbitration provision entered into by the corporation, the agent may seek the "protect[ion]" of said provision (citation omitted)). Neither Petitioner is a party to, or has otherwise agreed to be bound by the Arbitration Clause, which forms the sole basis for the Arbitration. Accordingly, the arbitrator has no jurisdiction over Petitioners, and this Court should enjoin the Arbitration from proceeding as to Petitioners.

**C. Petitioners Are Not Otherwise Bound By The Arbitration Clause**

In the absence of an express agreement to arbitrate, Mason must establish that Petitioners are somehow bound by an Arbitration Clause that they did not sign. The Second Circuit has recognized limited theories for binding non-signatories to arbitration agreements: "1) incorporation by reference; 2) assumption; 3) agency; 4) veil-piercing/alter ego; and 5) estoppel." *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003) (quoting *Thomson-CSF, S.A. v. Am. Arb. Ass'n*, 64 F.3d 773, 776 (2d Cir. 1995)). Mason has not alleged any such theory, and, as set forth below, none applies here.

*First*, Mason has never argued that the Employment Agreement containing the Arbitration Clause was incorporated into any document that Petitioners adopted. *See Thomson-CSF*, 64 F.3d at 777 (no incorporation by reference where party seeking to arbitrate had made no attempt to show that agreement to arbitrate had been incorporated into any document adopted by the non-signatory). *Second*, Petitioners have not assumed the obligation to arbitrate through any subsequent conduct, and in fact, expressly objected to their inclusion in the Arbitration. *See, e.g.*, *BS Sun Shipping Monrovia v. Citgo Petroleum Corp.*, 509 F. Supp. 2d 334, 347 (S.D.N.Y. 2007) (non-signatory did not assume the arbitration clause even though it appointed an arbitrator because

it specifically reserved its rights to challenge the validity of the arbitration when the arbitrator was appointed and then petitioned to stay the arbitration in federal court). *Third*, agency theory cannot bind Petitioners here, where the only party to the Agreement is the principal—BIG3, and there is no allegation nor evidence that Petitioners intended to be personally bound. *See McKenna Long & Aldridge, LLP v. Ironshore Specialty Ins. Co.*, No. 14-CV-6633, 2015 WL 144190, at *6–7 (S.D.N.Y. Jan. 12, 2015) ("[W]ell-established principle that an agent is not bound by his principal's contracts in the absence of clear evidence to the contrary has been consistently applied in the arbitration context." (internal quotation marks and citation omitted)). *Fourth*, Mason has never alleged (nor could he) that piercing the corporate veil is justified here. *See TNS Holdings, Inc.*, 92 N.Y.2d at 339–40 (non-signatory cannot be compelled to arbitrate absent a showing that the non-signatory "misused the corporate form for [his] personal ends so as to commit a fraud or wrongdoing or avoid any of its obligations"); *see also Thomson-CSF*, 64 F.3d at 777–78 (non-signatory company could not be bound under alter ego theory where non-signatory continued to function as a distinct entity, observed corporate formalities, and did not intermingle corporate finances, despite common ownership). *Fifth*, Petitioners did not directly benefit from or exploit the Employment Agreement containing the Arbitration Clause and thus are not estopped from avoiding an arbitration to which they have never consented. *Belzberg v. Verus Investments Holdings Inc.*, 21 N.Y.3d 626, 631, 633–34 (2013) (non-signatory could not be compelled to arbitrate where he did not "knowingly exploit[]" the benefits of the agreement containing the arbitration clause or "receive[] benefits flowing directly from the agreement"); *Veera v. Janssen*, No. 05 Civ. 2145, 2005 WL 1606054, at *3–5 (S.D.N.Y. July 5, 2005) (non-signatories not compelled to arbitrate by an estoppel theory where the non-signatories did not receive any direct benefit from the agreement).

## IV. Mason Should Be Permanently Enjoined From Proceeding Against Petitioners In The Arbitration

Mason's Arbitration should be enjoined as to Petitioners. "To obtain a permanent injunction, a plaintiff must succeed on the merits and 'show the absence of an adequate remedy at law and irreparable harm if the relief is not granted.'" *Roach v. Morse*, 440 F.3d 53, 56 (2d Cir. 2006) (citation omitted).

Petitioners meet each of these elements. *First*, Petitioners succeed on the merits as described above. *Second*, there is no relief that could adequately remedy the irreparable harm to Petitioners should Petitioners be forced to submit to arbitration of a dispute notwithstanding that Petitioners have never agreed to such arbitration. *See UBS Sec. LLC v. Voegeli*, 684 F. Supp. 2d 351, 354 (S.D.N.Y. 2010) ("It is beyond dispute that irreparable harm would result if UBS Securities were compelled to arbitrate defendants' claims without having agreed to arbitration."), *aff'd*, 405 F. App'x 550 (2d Cir. 2011); *Tellium, Inc. v. Corning Inc.*, No. 03 Civ. 8487, 2004 WL 307238, at *3 (S.D.N.Y. Feb. 13, 2004) ("Compelling arbitration of a matter not properly subject to arbitration constitutes 'per se irreparable harm.'" (citation omitted)); *Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003) (a party necessarily suffers irreparable harm if "forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable" (citation omitted)). Thus, this Court should permanently enjoin Mason from proceeding against Mr. Kwatinetz and Mr. Jackson in the Arbitration. *See, e.g.*, *In re Am. Express*, 672 F.3d at 142 (stating that "a district court may properly enjoin arbitration proceedings that are not covered by a valid and binding arbitration agreement"); *Voegeli*, 684 F. Supp. 2d at 355–56 (granting UBS' request for a permanent injunction restraining defendants from prosecuting their non-arbitrable claims against UBS in arbitration).

**CONCLUSION**

For the reasons set forth above, Petitioners respectfully request that this Court enjoin the Arbitration as to Petitioners and grant such further relief as the Court deems just, proper, and equitable.

DATED: New York, New York
July 24, 2018

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**

By: /s/ Rachel E. Epstein

Robert L. Raskopf
Christopher D. Kercher
Rachel E. Epstein

51 Madison Avenue, 22nd Floor
New York, New York 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100
robertraskopf@quinnemanuel.com
christopherkercher@quinnemanuel.com
rachelepstein@quinnemanuel.com

*Attorneys for Petitioners*