UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JEFFREY KWATINETZ, O'SHEA JACKSON,<br><br>       Petitioners,<br><br>   -against-<br><br>ROGER MASON,<br><br>       Respondent. | 18-cv-06659-JGK |

**PETITIONERS' REPLY MEMORANDUM OF LAW IN**
**FURTHER SUPPORT OF PETITION TO ENJOIN ARBITRATION**

Petitioners Jeffrey Kwatinetz and O'Shea Jackson (collectively, "Petitioners"), submit this reply memorandum of law in further support of their petition for an order enjoining as against Petitioners the employment arbitration brought by Respondent Roger Mason ("Respondent") in New York before the American Arbitration Association (the "AAA"), Case No. 01-18-0001-1291 (the "Arbitration").

# TABLE OF CONTENTS

PRELIMINARY STATEMENT..................................................................................6

ARGUMENT………………................................................................................8

I.      Respondent Disregards Petitioners' Cited Cases Holding That As Non-Parties To The Arbitration Agreement, The Question of Whether Petitioners Can Be Forced To Arbitrate Is Properly Heard By This Court........................................................................................................8

II.     Petitioners Are Not Bound By The Arbitration Clause On Agency Or Estoppel Grounds........................................................................10

CONCLUSION…………………….........................................................................14

CERTIFICATE OF COMPLIANCE......................................................................15

## **TABLE OF AUTHORITIES**

CASES

*Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Stucco Systems, LLC,*
    289 F. Supp. 3d 457 (S.D.N.Y. 2018)..............................................................................6

*Eaton Vance Mgmt. v. ForstmannLeff Assocs., LLC,*
    No. 06 Civ. 1510, 2006 WL 2331009 (S.D.N.Y. 2006).................................................10

*Thomson-CSF, S.A. v. Am. Arbitration Ass'n,*
    64 F.3d 773 (2d Cir. 1995)........................................................................................9, 10

*Scher v. Bear Stearns & Co., Inc.,*
    723 F.Supp.211 (S.D.N.Y. 1989)...................................................................................10

*Brener v. Becker Paribas, Inc.,*
    628 F.Supp. 442 (S.D.N.Y. 1985).................................................................................10

*Flink v. Carlson,*
    856 F.2d 44 (8th Cir. 1988)............................................................................................11

*Interocean Ship. Co. v. Nat'l Ship. and Trading Corp.,*
    523 F.2d 527 (2d Cir. 1975)..........................................................................................11

*Phoenix Co., Inc. v. Abrahamsen,*
    05–CV–4894, 2006 WL 2847812 (S.D.N.Y. Sept. 28, 2006).......................................11

*Life Techs Corp. v. AB Sciex Ple. Ltd.,*
    803 F. Supp. 2d 270 (S.D.N.Y.).....................................................................................12

*HD Brous & Co. Inc. v. Mrzyglocki,*
    No. 03 Cv. 8385, 2004 WL 376555 (S.D.N.Y. Feb. 26, 2004).....................................12

*MAG Portfolio Consultant, GmbH v. Merlin Biomed Grp. LLC,*
    268 F.3d 58, 61 (2d Cir. 2001).......................................................................................11

*Belzberg v. Verus Investments Holdings Inc.,*
    21 N.Y.3d 626 (2013)....................................................................................................12

*Arhontisa Maritime Ltd. v. Twinbrook Corp.,*
    No. 01 Civ. 5044, 2011 WL 1142136 (S.D.N.Y. 2011).................................................13

*Lang v. First Am. Tit. Ins. Co.,*
    No. 12-cv-266S, 2012 WL 5221605 (W.D.N.Y. Oct 22, 2012).....................................13

**PRELIMINARY STATEMENT**

As established in Petitioners' moving papers, there is no basis for Respondent's ill-conceived attempt to arbitrate against Petitioners, who are non-parties and non-signatories to the Employment Agreement (the "Agreement"), between Respondent and his former employer BIG3 Basketball, LLC, a Delaware LLC ("BIG3" or the "Company"). The Agreement contains an arbitration provision that by its express and clear language binds only Respondent and BIG3 (the "Arbitration Clause"). Petitioners, who are officers and directors of BIG3, were not Respondent's employer, parties to the Agreement, or signatories of the Agreement. Nor did Petitioners manifest assent to be bound to the Agreement and the Arbitration Clause. The law is clear that one must manifest assent to arbitration to be bound by arbitration. Here, there is no assent by the Petitioners. Petitioners never agreed to arbitrate with Respondent and there is no basis for their inclusion in the Arbitration sought to be enjoined as against Petitioners.

Respondent advances inapplicable arguments to try to bind Petitioners to the Arbitration. These arguments are without merit.

Respondent unavailingly argues that because the Arbitration Clause included a clause delegating authority to the arbitrator to hear disputes as to arbitrability of claims, the question of whether Petitioners are subject to arbitration is for the arbitrator, not this Court. The law is well-settled that such delegation clauses may delegate authority to the arbitrator to hear disputes as to the arbitrability of a type of claim or issue, but do not delegate to the arbitrator the issue of whether a non-signatory is subject to arbitration.

Respondent also unavailingly argues that the arbitrator can determine the issue of whether a non-party can be bound to arbitration because there is random language in the Agreement in sections 2(a), 5(c) and 14 that refers to Petitioners by name and title, thereby showing intent to support delegation to the arbitrator on the issue of whether non-parties can be

5

bound to arbitration. That an employment agreement between a corporate entity and a former top level executive makes reference to other top level executives and their respective positions, is neither surprising, nor a means to support delegation to an arbitrator as to whether non-parties agreed to arbitrate.

Respondent's reliance on §16(d) of the Agreement for this point is likewise misplaced. Section 16(d) is within a class action waiver section of the Agreement that, after addressing the waiver, states that the arbitrator is within his/her authority to address disputes that may involve claims or issues that pertain in some way to actions of other executives of the company. This language however, only clarifies the scope of the arbitrator's authority regarding this waiver and provides that the arbitrator has authority to hear claims between the parties that fall within the delineated scope of the arbitration agreement. It does not expand the scope of the arbitrator's authority to determine whether the Petitioners should be bound to arbitration or abrogate the Court's jurisdiction to address this issue.

Respondent next unavailingly argues that if the Court has the jurisdiction to determine whether Petitioners should be bound to arbitration, it should bind them under an agency theory. Under general agency principles, however, an agent is not bound where the only party to the Agreement is the fully disclosed principal, BIG3, and there is no allegation or evidence that Petitioners intended to be personally bound; likewise, that Petitioner signed the Agreement on behalf of BIG3, the disclosed principal, does not bind the Petitioner to arbitration.  Respondent's cases are inapposite as they addressed the issue of whether certain claims fall within the scope of an arbitration agreement, not whether non-parties can be bound.   Other cases resoundingly support Petitioners' position that non-signatory corporate executives should not be bound to an arbitration agreement of the corporate entity and to force such executives to arbitrate abrogates long-standing protections of corporate form.

Respondent's final unavailing argument is that Petitioners are bound to arbitrate under a theory of estoppel. Respondent does not establish that Petitioners directly benefited from or exploited the Agreement. BIG3 terminated Respondent for cause and Respondent did not provide direct benefits to BIG3, let alone to the Petitioners. If anything, the Agreement was a detriment to Big3. Thus, Petitioners should not bound by estoppel.

Respondent's arguments do not support an exception to the settled law that non-parties should not be forced to arbitrate without their consent and thereby relinquish their sacrosanct rights of a trial before a judge and/or jury. If the Court accepted Respondent's arguments, any senior company executive or owner who is a non-signatory to an Agreement with an arbitration clause could be bound to arbitration without his consent. This would be contrary to well-established law. Accordingly, Petitioners respectfully request that this Court enjoin the Arbitration as to Petitioners.

## ARGUMENT

I. **Respondent Disregards Petitioners' Cited Cases Holding That As Non-Parties To The Arbitration Agreement, The Question of Whether Petitioners Can Be Forced To Arbitrate Is Properly Heard By This Court**

Rather than distinguish or address many of Petitioners' cited cases that hold that whether non-signatories to an arbitration agreement can be bound is a question for the court and not the arbitrator, Respondent hones in on Petitioners' citation of Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Stucco Systems, LLC, 289 F.Supp.3d 457, 467 (S.D.N.Y. 2018) and argues that such decision is supportive of an arbitrator's authority to determine whether non-parties should be bound to arbitration. That is not so. Nat'l Union Fire Ins. Co. held that because there was no clear and unmistakable indication of the signatory parties that the non-party was to be bound by the agreement at issue, whether the non-party was to be bound to the agreement was an issue for judicial determination. Id.

Attempting to contort Nat'l Union Fire Ins. Co., Respondent argues that Petitioners should be bound because they are "mentioned" in a few random, cherry-picked excerpts in the Agreement such as in §§2(a), 5(c), and 14. Nothing in these sections, however, expressly or impliedly, relates to arbitration. Section 2(a) addresses that Respondent will be the senior most executive officer of the company (other than O'Shea Jackson and Jeff Kwatinetz). Section 5(c) refers to capital contributions by Respondent and his ownership interest in the LLC, stating that they shall be of the same class and subject to the same terms as those granted to Petitioners. The "Good Reason" clause in §14(f) provides that it would be good reason for Respondent to resign if the Agreement were assigned to another company other than a company managed by Petitioners. Respondent's argument is an unavailing and contorted read of the Agreement.

Respondent likewise attempts to use §16(d) (ii) of the Agreement in stating that it "clearly establishes that the Employment Agreement's arbitration provision is intended to address claims by Mason arising from his employment against Kwatinetz and Jackson, both of whom are current officers and directors of the Company." (Respondent's Br., p. 8). Not so.

Section 16(d) (ii), however, refers to the category of "Class and Collective Action Waiver" and is simply a limitation on the scope of the arbitrator's authority in the context of a class or collective action waiver, and not, as Respondent boldly intimates, a grant of jurisdiction over non-parties/signatories such as Petitioners. The plain language states that the arbitrator has authority to hear claims ***between the parties*** (i.e. Company and Respondent) that fall within the delineated scope. Respondent's attempt to conflate the scope of the arbitrator's contractually-provided for ability to hear a claim between the parties to the Agreement arising from certain types of conduct with a jurisdictional grant of authority over any person named in § 16(d)(ii) turns the idea of arbitral jurisdiction on its head.

Finally, Eaton Vance Mgmt. v. ForstmannLeff Assocs., LLC, No. 06 Civ. 1510, 2006 WL 2331009 (S.D.N.Y. 2006), cited by Respondent does not stand for the proposition that where an agreement, such as in §16(f), provides that the arbitration shall be governed by the rules of the AAA, issues regarding whether non-parties can be bound to arbitrate are for the arbitrator. Rather, it involved the question of whether the court or an arbitrator determines which claims are arbitrable. Accordingly, Eaton Vance is inapposite.

## II. Petitioners Are Not Bound By The Arbitration Clause On Agency Or Estoppel Grounds

The Second Circuit has recognized only "limited theories upon which [it] is willing to enforce an arbitration agreement against a non-signatory." Thomson-CSF, S.A. v. Am. Arbitration Ass'n, 64 F.3d 773, 780 (2d Cir. 1995) (cited by Respondent).

Thomson-CSF, S.A. v. Am. Arb. Assn. supports Petitioners' position that a non-signatory executive should not be bound to an arbitration agreement of the corporate entity and to do so would be to improperly abrogate the protections of corporate form. There, considerations of mutual benefits derived from affiliation were rejected as insufficient to bind a non-signatory on agency principles to arbitration. The Second Circuit rejected, as overly expansive, the district court's application of a "hybrid approach" to compel arbitration that had relied on control, agency and other factors. Id. The court roundly rejected that approach stating that the "the district court's hybrid approach dilutes the safeguards afforded to a non-signatory by the ordinary principles of contract and agency and fails to adequately protect parent companies, the subsidiaries of which have entered into arbitration agreements." Id. Respondent would have this Court discard these safeguards afforded to Petitioners as non-signatories to the Agreement and utilize a similar hybrid approach by drawing on Petitioners' "conduct in their capacity as the co-

founders, directors and officers of the Company." (Resp. Br., p. 10). This was rejected by the Second Circuit in Thompson-CSF and should be rejected here.

Respondent raises two of these limited theories, neither of which aids Respondent. Respondent relies on Scher v. Bear Stearns & Co., Inc., 723 F.Supp. 211, 216 (S.D.N.Y. 1989*)* and Brener v. Becker Paribas, Inc., 628 F.Supp. 442, 451 (S.D.N.Y. 1985) to support an agency argument. However, both cases are distinguishable as they arise out of the securities law context involving the dynamic between customers-brokerage firms and the corresponding customer accounts. Indeed, the court in Scher aptly noted that "courts in this and other circuits have spoken repeatedly on this precise issue…acts by employees of one of the parties to a ***customer agreement*** are equally arbitrable as acts of the principals as long as the challenged act falls within the scope of the ***customer agreement***. Id. (emphasis added).  They also involved the defendant/respondent brokerage firms invoking the respective arbitration clauses and moving to compel arbitration—against the petitioner/plaintiffs' interests. Here it is Petitioners—non-signatories to the Agreement—who are seeking to enjoin the arbitration

Moreover, Respondent's argument that "Kwatinetz and Jackson 'bargained for'—and received— 'protection' in the form of the ability to arbitrate against Mason" (Resp. Br., p. 11) befuddles the actual signatories to the Agreement. If Petitioners had wanted to enjoy the "protection" in the form of the ability to arbitrate they would have done so by being parties to the Agreement. Accordingly, Respondent cannot invoke agency principles to ensnare Petitioners into arbitration.

Likewise, Respondent's argument that because Petitioner Kwatinetz signed the Agreement on behalf of BIG3, he should be bound by it as an agent is unavailing.  If an agent fully discloses the identity of his principal to the third party, then, absent agreement to the contrary, he is insulated from liability. Further, when, an agent signs a contract for his

corporation it is simply a corporate act. Consequently, "[s]igning an arbitration agreement as agent for a disclosed principal is not sufficient to bind the agent to arbitrate claims against him personally." Flink v. Carlson, 856 F.2d 44, 46 (8th Cir. 1988); Interocean Ship. Co. v. Nat'l Ship. and Trading Corp., 523 F.2d 527, 538 (2d Cir. 1975); Restatement (Second) of Agency § 320 (1958).

Respondent's estoppel argument also fails. To bind a non-signatory to an arbitration agreement under principles of estoppel, "the benefits of the agreement to the non-signatory must be direct—that is, flow directly from the agreement." Phoenix Co., Inc. v. Abrahamsen, 05–CV–4894, 2006 WL 2847812, at *6 (S.D.N.Y. Sept. 28, 2006) ("[t]he benefit derived from an agreement is indirect where the non-signatory exploits the contractual relation of parties to an agreement, but does not exploit (and thereby assume) the agreement itself"). See also Respondent's cited case, MAG Portfolio Consultant, GmbH v. Merlin Biomed Grp. LLC, 268 F.3d 58, 61 (2d Cir. 2001).

Respondent has not provided any evidence that Petitioners directly benefited from or exploited the Agreement. Respondent merely points to Petitioners' status as BIG3 senior executives with equity interests who purportedly personally benefitted from an increase in Company value arising from Respondent's services. (Respondent Br., p. 12.) This proves nothing, as Respondent points to no specific direct personal benefit flowing to the Petitioners, rather than BIG3. Furthermore, as BIG3 terminated Respondent for cause, nobody, particularly Petitioners, benefitted from Respondents' services.

Respondent has also failed to establish that Petitioners exploited the Agreement. The Open Letter referred to in Respondent's brief relates to the business of BIG3, who terminated Respondent, and is not an exploitation of the Agreement. It was also drafted three months after Respondent's termination and cannot be deemed an exploitation of the Agreement. As stated in

Phoenix Co., Inc. v. Abrahamsen, supra, exploitation means assumption of the Agreement. 2006 WL 2847812, at *6. Respondent does not argue that Petitioners assumed the Agreement.

Belzberg v. Verus Investments Holdings Inc., 21 N.Y.3d 626 (2013), a New York Court of Appeals case cited by Respondent, supports Petitioners' position that they are not bound under an estoppel theory. Respondent had alleged that petitioner diverted profits attributable to that company's investment to petitioner's friend. Id. at 629. The court found that Petitioner's diversion did not constitute a direct benefit, but instead flowed directly from his company status, not from the underlying agreement. Id. The court concluded that estoppel did not apply and the non-party should not be bound to arbitration.

Respondent's other cases also fail to support his position. In Life Techs Corp. v. AB Sciex Ple. Ltd., 803 F. Supp. 2d 270 (S.D.N.Y. 2011), a trademark licensee was estopped from avoiding arbitration because the licensee previously executed documents that would have bound it to arbitration, but then refused to sign later agreements where the licensee was reaping the benefits of the agreement. This is inapposite as Petitioners were never parties to any version of the Agreement. HD Brous & Co. v. Mrzyglocki, No. 03 Civ. 8385, 2004 WL 376555 (S.D.N.Y. Feb. 26, 2004) and Am. Bureau of Shipping v. Tencara Shipyard S.P.A., 170 F.3d 349 (2d Cir. 1999) are distinguishable due to direct benefits received by Petitioners. In HD Brous, at *7, the court also held that the non-signatory to an arbitration clause was nevertheless bound to arbitrate because it was "an intended beneficiary of the Agreement, knew that it was an intended beneficiary of the Agreement, and knowingly accepted benefits" from the contract. That is not the case here. [1]

---

[1] Respondent asserts that the facts at issue "in no way resemble those of an 'indirect benefit' case," and cites to Arhontisa Maritime Ltd. v. Twinbrook Corp., 2011 WL 1142136 (S.D.N.Y.

## **CONCLUSION**

Petitioners respectfully request that this Court enjoin the Arbitration as to Petitioners and grant such further relief as the Court deems just.

DATED:   New York, New York
         August 29, 2018                    **GERAGOS & GERAGOS APC**

                                            By:  /s/ Lori G. Feldman
                                            Lori G. Feldman (LF-3478)
                                            Tina Glandian (TG-3014)
                                            7 West 24th Street
                                            New York, New York
                                            Telephone: (212) 363-7500
                                            Facsimile: (212) 363-7171

                                            *Attorneys for Petitioner*

---

2011) and Lang v. First Am. Tit. Ins. Co., 2012 WL 5221605 (W.D.N.Y. Oct 22, 2012). However, *Arhontisa* at *4 found that because the non-signatory did not receive direct benefits that resulted under the terms of the contract, nor did the non-signatory receive indirect benefits, it was "difficult to conceive of *any* benefit that [the non-signatory] directly received." The Lang court found no direct benefit. Accordingly, this case resembles Arhontisa and Lang, as Respondent has made no factual showing as to a direct benefit.

## CERTIFICATE OF COMPLIANCE

I certify that the attached Reply Brief is 2,792 words and complies with this court's formatting rules.

DATED:  New York, New York
           August 29, 2018                   **GERAGOS & GERAGOS APC**

                                                  By: By:  /s/ Lori G. Feldman
                                                  Lori G. Feldman (LF-3478)
                                                  Tina Glandian (TG-3014)
                                                  7 West 24th Street
                                                  New York, New York
                                                  Telephone: (212) 363-7500
                                                  Facsimile: (212) 363-7171

                                                  *Attorneys for Petitioner*